**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02787

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

        Plaintiffs,

   vs.

THE ART, LLC, a Colorado Limited Liability Company

        Defendant.

_____/

# COMPLAINT

## Introduction

    Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, THE ART, LLC, a Colorado Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq.* ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 *et seq.* ("CADA").

## The Parties

1.    Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris.

2.    Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

1

3.     Defendant, THE ART, LLC, a Colorado Limited Liability Company, either owns or operates a place of public accommodation, in this instance a hotel, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4.     Defendant's property, known as The Art, a Hotel, Curio Collection by Hilton ("The Art"), is a hotel located at 1201 N. Broadway, Denver, CO 80203, within Denver County ("Subject Property").

5.     Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7.     Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8.     The Defendant, THE ART, LLC, owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

9.     Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury and therefore has a physical impairment that substantially limits many of his major life

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

activities[3] including, but not limited to, not being able to walk or stand.

10.     MR. MEGGS requires the use of a wheelchair to ambulate, and is a member of the Plaintiff organization, ACCESS 4 ALL, INC.

11.     Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Background

12.     Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their repeated infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

13.     Mr. Meggs encounters architectural barriers at many of the places he visits. Seemingly trivial architectural features such as parking spaces & access aisles, curb ramps, sidewalks, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous, and even dangerous for him and other wheelchair users.

14.     The barriers to access that Mr. Meggs experiences at differing places of public accommodation are often quite similar in nature. For example, he is repeatedly faced with sloping in parking lots, cracks in sidewalks and asphalt, and improper restrooms (even when designated "accessible" or "handicapped"). He is often angered and disheartened by the repetitiveness of the complaints he has been forced to make to employees and management, usually to no avail. Mr. Meggs has become reserved to the fact that the only way to affect change is through the ADA; as

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

Congress intended.

15.     Mr. Meggs has visited The Art on multiple occasions, his last visit occurred on or about April 13, 2022.  Mr. Meggs stayed at The Art as an overnight guest and bone fide purchaser to avail himself of the goods and services offered to the public within but found that the Subject Property was littered with violations of the ADA, both in architecture and in policy.[4]

16.     Although a California resident, Mr. Meggs travels to Colorado several times per year, both for pleasure and for business meetings pertaining to the operation of Access 4 All, Inc. The members of Access 4 All, Inc. are spread across the United States and have found that Colorado is a desirous place to meet; both due to its geographic location and the breadth of activity that it offers.

17.     Mr. Meggs has a reservation to return to The Art on January 4, 2023; he also intends to return on or about April 1, 2023, during a subsequent trip to the Denver area. He intends to revisit The Art not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance - he sincerely hopes that his return is not made in vain.

18.     Mr. Meggs intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

19.     Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

20.     The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have actual notice and reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

_____

[4] Mr. Meggs subsequently returned to the exterior and lobby of the property in August 2022, but no change in conditions was observed.

21.     Mr. Meggs has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property, as described, but not necessarily limited to, the barriers he has personally experienced which are listed in paragraph 26 of this Complaint.

22.     Following any resolution of this matter Mr. Meggs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in any compromise made between the parties or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

23.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

24.     The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property as prohibited by the ADA.

25.     A preliminary inspection of the Subject Property has shown that violations of the ADA exist.  That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in paragraph 26 are both technically feasible and readily achievable.

26.     The following are architectural barriers and violations of the ADA that Mr. Meggs personally encountered during his last stay at The Art:

**Access to Goods and Services**

   a.   The Art fails to make reasonable accommodations in policies, practices, and procedures to

provide for the full and equal enjoyment of disabled individuals nor does it maintain the elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to provide fully accessible elements, remove debris and stored goods on counter tops and a failure to maintain clearance to accessible elements and paths of travel prevented Mr. Meggs from freely traveling about the hotel and using the accessible elements; which include but are not limited to telephones, desks, tables, and other elements required to be accessible. This failure in policy is easily correctable but must be monitored into the future, as this type of discriminatory practice is often recurring and continuing.

b. Mr. Meggs could not access counters or workstations as they were mounted beyond his reach; a violation of the ADAAG Section 7.2(1) and Section 308 of the 2010 ADA Standards. These barriers have prevented Mr. Meggs equal access to elements within the hotel; their remediation is both technically feasible and readily achievable.

c. Mr. Meggs could not access the dining or lounge tables nor the workstations as they lack the proper knee and toe clearance necessary for him to approach; these barriers are a violation of the ADAAG and Sections 308 and 902 of the 2010 ADA Standards. Due to the foregoing Mr. Meggs could not make use of the writing surfaces nor dine in a comfortable manner. The remediation of these barriers is both technically feasible and readily achievable.

**Lobby/Common Area Restrooms**

d. The lavatories located within the lobby restroom at Art Hotel lack the requisite knee and toe clearance, a violation of ADAAG Section 4.19 and Section 606 of the 2010 Standards for Accessible Design.  Mr. Meggs could neither approach nor reach the sink to wash his

hands. The remediation of this barrier is both technically feasible and readily achievable.

e.  The lobby restroom contains dispensers which are mounted beyond Mr. Meggs' reach or obstructed due to failures in policy, a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Mr. Meggs was unable to make use of the improperly mounted dispensers. The remediation of this barrier is both technically feasible and readily achievable.

**Accessible Guestrooms/Suites**

f.  Mr. Meggs' accessible guestroom contained a roll-in shower which did not possess the requisite clear floor space, was outfitted with an improperly mounted spray unit, lacked a secure folding seat, and contained improper grab bars needed for stabilization; these barriers violate the ADAAG and Sections 308, 607, 608, 608.2.2, 608.2.3, and 609 of the 2010 ADA Standards. The roll-in shower must contain a securely mounted folding seat, controls which are easily accessible from said seat, and a flat surface for safe entry into the shower. Due to the lack of accessible elements Mr. Meggs could not make use of the shower in a safe and comfortable manner. The remediation of these barriers is both technically feasible and readily achievable.

g.  The toilet within Mr. Meggs' guestroom restroom contained improperly mounted grab bars, an improper centerline, and a flush control which was mounted on the wall-side; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Meggs could not safely transfer to the toilet nor use the restroom safely/comfortably without assistance. The remediation of this barrier is both technically feasible and readily achievable.

h.  Mr. Meggs could not make use of the mirror within the guestroom restroom due to its improper height, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

      i.   Mr. Meggs could not exit his guestroom without assistance (due to a lack of maneuvering clearance and approach space), in violation of the ADAAG and Sections 308 and 404 of the 2010 ADA Standards. This ADA violation is of great concern as Mr. Meggs could not exit the room without assistance and could easily become trapped inside. The remediation of this barrier is both technically feasible and readily achievable.

      j.   Towel racks, iron, ironing board, rods, helves, and other storage surfaces are mounted above the allowable limits, a violation of the ADAAG and Sections 308 and 309 of the 2010 ADA Standards. Mr. Meggs could not make use of these elements due their improper height. The remediation of this barrier is both technically feasible and readily achievable.

      k.   Mr. Meggs could not make use of the mirror within the guestroom restroom due to its improper height, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

27.    Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

28.    The discriminatory violations described in paragraph 26 may not be an exhaustive list of

_____

[5] 28 CFR § 36.104

the ADA violations that exist at The Art, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Subject Property in violation of the ADA/CADA.

29.     Plaintiffs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

30.     Defendant has discriminated against Plaintiffs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

31.     Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

32.     Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

33.     Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals

_____

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)
[7] 42 U.S.C. § 12181(b)(2)(A)(ii)

because of the absence of auxiliary aids and services.[8]

34.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

35.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal if and when such alterations have taken place at the Subject Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Subject Property into compliance with the ADA.

36.     Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

37.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

    a.   Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

---

[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

[9] as defined by 28 CFR § 36.401(a)(2)

[10] 28 CFR § 36.402(a)(2)

b.  Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

c.  Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

38.     Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

39.     Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

40.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

41. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs with injunctive relief, including an order to require the Defendant to alter The Art and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the

Defendant cure their violations of the ADA.[11]

**WHEREFORE,** Plaintiffs respectfully request:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to cure all ADA violations existing at the Subject Property listed herein or later found through discovery; to make the Subject Property accessible to and usable by individuals with disabilities; and to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## <u>COUNT II</u>
### Violation of Colorado Anti-Discrimination Act,
### C.S.R. § 24-34-601 et seq. (CADA)

42.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

43.     The individual Plaintiff, JOHN MEGGS, is a disabled individual as defined by C.S.R. §

---

[11] 42 U.S.C. § 12188(b)(2)

24-34-301(2.5).

44.     Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

45.     Colorado law provides that no person shall be discriminated against in regards to public accommodations on the basis of disability.[12]

46.     Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

47.     Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

48.     Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

49.     Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

50.     As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods,

---

[12] C.S.R. § 24-34-601(2)(b)

services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

51.     As a result of the foregoing discrimination, through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully demand:

    a.  That this Court assume jurisdiction.

    b.  The Court issue a Declaratory Judgment determining that the Defendants are in violation of the CADA.

    c.  An injunction ordering Defendant to immediately comply with the CADA by removing all architectural barriers listed herein or later found through the normal course of discovery.

    d.  A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

    e.  An order requiring the Defendant to maintain the required accessible features at the Subject Property as required by the CADA to cease its discriminatory practices.

    f.  Any other relief that this Court deems just and proper and is allowable under the CADA.

    Respectfully submitted on this 24th day of October 2022,

                                  */s/ Jon G. Shadinger Jr.*
                                  Jon G. Shadinger Jr., Esq.
                                  Shadinger Law, LLC
                                  717 E. Elmer Street, Suite 7
                                  Vineland, NJ 08360
                                  Direct (609) 319-5399
                                  Office (609) 236-3211
                                  Fax (609) 900-2760
                                  js@shadingerlaw.com
                                  *Attorney for Plaintiffs*